IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| SHAPPA BAKER, | ) | |
| | ) | No. 34967-5-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEPARTMENT OF CORRECTIONS, a | ) | UNPUBLISHED OPINION |
| subdivision of the State of Washington, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, C.J. — Shappa Baker, an inmate with the Washington Department of
Corrections (DOC), appeals from a summary judgment order dismissing his Public
Records Act suit against DOC and denying his cross motion for summary judgment. The
parties principally dispute whether DOC, under the Public Records Act, chapter 42.56
RCW, must retrieve financial records from Bank of America that DOC earlier scanned
and sent by the Internet to Bank of America for processing and storage. Because the
factual record does not enable us to determine which, if either, party is entitled to
summary judgment, we vacate the summary judgment order favoring DOC and remand
for further proceedings.

No. 34967-5-III
*Baker v. Dep't of Corr.*

FACTS

This appeal illustrates the complications resulting from handling and storing written documents in the computer era and Internet age. Instead of records resting in one physical file folder with one person overseeing the folder, the Internet scatters the records throughout cyberspace, no one person serves as a physical custodian of the records, and no one knows the extent and location of the records. Sometimes purported advances in efficiency complicate our lives.

On April 26, 2015, Shappa Baker, while in the custody of DOC, sent DOC a request for public records. The request sought, in part, the front and back of thirty-one negotiable financial instruments with Baker as payee and deposited into his DOC inmate trust subaccount. Baker's public records request read:

Pursuant to the Public Records Act[,] please make available the following records:
1) The front of each of the following thirty-one (31) negotiable financial instruments sent in my name and deposited into my Trust Sub-Accounts:

|    | Date | Trans. # | Method of Payment | Sub-Account | Amount |
|----|------|----------|-------------------|-------------|--------|
| a. | 11/06/08 | 13036667 | Money Order | Postage | $ 10.00 |
| b. | 11/06/08 | 13037026 | Money Order | Spendable | 10.00 |
| c. | 11/16/08 | 13081171 | Western Union | Spendable | 120.00 |
| d. | 12/08/08 | 13160108 | Western Union | Spendable | 100.00 |
| e. | 12/15/08 | 13199513 | Gratuity | Spendable | 14.70 |
| f. | 1/16/09 | 13312017 | Money Order | Spendable | 120.00 |
| g. | 2/04/09 | 13391911 | Money Order | Postage | 20.00 |
| h. | 2/13/09 | 13428689 | Gratuity | Spendable | 16.38 |
| i. | 3/13/09 | 13551230 | Gratuity | Spendable | 13.02 |
| j. | 3/17/09 | 13575671 | Money Order | Postage | 50.00 |

2

| | | | | | |
|---|---|---|---|---|---|
| k. | 4/15/09 | 13704324 | Gratuity | Spendable | 55.00 |
| l. | 5/15/09 | 13835144 | Gratuity | Spendable | 55.00 |
| m. | 6/03/09 | 13904499 | Western Union | Spendable | 100.00 |
| n. | 6/15/09 | 13961049 | Gratuity | Spendable | 55.00 |
| o. | 6/17/09 | 13971995 | Western Union | Spendable | 50.00 |
| p. | 7/15/09 | 14088606 | Gratuity | Spendable | 16.80 |
| q. | 7/15/09 | 14088839 | Gratuity | Spendable | 30.24 |
| r. | 7/23/09 | 14120561 | Money Order | Postage | 50.00 |
| s. | 8/06/09 | 14183305 | Money Order | Postage | 15.00 |
| t. | 8/06/09 | 14183638 | Money Order | Spendable | 15.00 |
| u. | 8/18/09 | 14241483 | Gratuity | Spendable | 20.16 |
| v. | 10/05/09 | 14432280 | Western Union | Spendable | 10.00 |
| w. | 11/02/09 | 14554029 | Western Union | Spendable | 10.00 |
| x. | 5/17/10 | 15386625 | Gratuity | Spendable | 67.40 |
| y. | 11/18/10 | 16565586 | Gratuity | Spendable | 70.40 |
| z. | 1/20/11 | 16799272 | Refund | Spendable | 60.00 |
| aa. | 4/04/11 | 17076881 | Money Order | Postage | 10.00 |
| bb. | 4/07/11 | 17094556 | Western Union | Spendable | 10.00 |
| cc. | 5/18/11 | 17263742 | JPay | Spendable | 10.00 |
| dd. | 3/07/13 | 19548540 | Warrant | Spendable [1,800] | 4,000.00 |
| ee. | 9/16/13 | 20240864 | Gratuity | Spendable | 49.20 |

and

    2) The back side of each negotiable instrument, with the endorsement, sent in my name and received for deposit into my Trust accounts since February 17, 2005.

    Thanks for your prompt response and fullest assistance in satisfying this PRA request.

Clerk's Papers (CP) at 72. DOC later added the letters corresponding to each request.

We note some anomalies and ambiguities in Shappa Baker's records request. The request, in paragraph 2, for the back of negotiable instruments, extended to instruments deposited more than three years before the date of the instruments, for which Baker sought the front side in paragraph 1. Nevertheless, the parties litigate on the assumption

that Baker only sought the back side of the negotiable instruments listed in paragraph 1 of his public records request.

We had thought that Western Union issues money orders. Neither party in his or its respective briefs explains to this court the difference between "Western Union" and "Money Order" for purposes of this list. Apparently Shappa Baker believes a money order would have both a front side and a back side, but a "Western Union" would only contain one side. We observe that the money orders produced by DOC come from the United States Postal Service. Perhaps the "Western Union" entries constitute money wires.

The parties do not identify the nature of a refund, JPay, or warrant, or explain why any of these items would be considered a negotiable instrument, or characterize the form of a writing in which these items would be expressed. The misnomer "Gratuity" in Shappa Baker's public records request refers to money deposited into an inmate's trust subaccount for prison work. By the wording of his public records request, Shappa Baker must have considered a deposit for prison work to constitute a negotiable instrument. A payroll sheet shows the amount paid by DOC to inmates for work.

DOC manages, with the assistance of Bank of America, the finances of inmates through an internal trust accounting system. Pursuant to law, DOC provides this service in part to assist with and confirm an inmate's payment of legal financial obligations imposed by a sentencing court and payment of other expenses charged by the government

4

to an inmate. DOC deducts funds from money deposited in an inmate subaccount to pay for these inmate obligations. RCW 72.09.110, .111(1), .480(2).

DOC deposits inmate checks and money orders into one commingled inmate trust account with Bank of America, by scanning the negotiable instruments using a remote deposit terminal. DOC places an endorsement stamp on the back side of the negotiable instrument. The deposit terminal uses Bank of America's proprietary CashPro software to create and send a digital image of the negotiable instruments to the bank.

When sending copies of the negotiable instrument to Bank of America, DOC scans both the front and back of the instruments. The bank exclusively and digitally stores the scans on the bank's servers. DOC does not store the images in its computers. According to DOC, the images created by the CashPro software are never DOC records. DOC does not know if Bank of America retains the front and back of each deposited negotiable instrument on the bank's servers. After depositing a negotiable instrument, DOC's trust accounting system credits an inmate's subaccount with the information on a deposit slip. By policy, DOC only retains negotiable instruments, such as ones requested by Shappa Baker, for a limited amount of time after deposit. DOC destroys the scanned records in its possession after ninety days in storage.

To later search for images of deposited negotiable instruments, DOC may interface with Bank of America servers by using the bank's proprietary software. To do so, DOC must enter parameters, such as dates, and then scan images of many deposits,

5

including deposits for other inmates. DOC accesses the scanned documents from Bank of America for a fee when DOC must inspect the records for reconciliation or audit purposes. DOC employees review the check and money order images to ensure the image amounts match with amounts in a prisoner's account.

DOC received Shappa Baker's public records request on April 30, 2015, at DOC's Public Disclosure Unit (PDU) in Tumwater. Within five days of the request, Gaylene Schave, a public disclosure specialist in the PDU, sent a reply letter to Baker acknowledging receipt of his request, reiterating his request, and assigning a tracking number to the request, PDU-34168. Schave predicted a response date of July 29, 2015. She then assigned the task of retrieving the records to Cherrie Borgen. Borgen, in turn, assigned other DOC employees to assist in the records search, including employees at DOC headquarters and employees at the prisons in which Baker resided: the Washington State Penitentiary, Airway Heights Correctional Facility, and Coyote Ridge Correctional Facility.

On May 7, 2015, a supervisor assigned Ben Estock the task of gathering records responsive to Shappa Baker's public records request in the possession of Coyote Ridge Correctional Facility. On May 21, Estock wrote by e-mail to Cherrie Borgen:

> Only two of these belong to us. Here are the scanned copies the bank faxed us for 8/6/2009 deposits. I can mail you the hard copies if you send me your address.

6

CP at 75. The August 6, 2009 deposits represent requests "s" and "t" in Shappa Baker's public records request.

In his appeal brief, Shappa Baker writes:

> Meanwhile, Ben Estock at Coyote Ridge Corrections Center (CRCC) responded to Baker's forwarded request by asking the Bank of America for copies. CP 67-68. (Baker had transferred to the Washington State Penitentiary (WSP) on October 28, 2008, returning to CRCC on August 11, 2009. CP 81-82[]. Estock responded to Borgen by email on May 21, 2015, attaching the faxed copies the bank had sent—front and back sides of two money orders deposited August 6, 2009. CP 66-67. Baker did not receive these documents until the Department responded to his second set of production requests on December 30, 2015. CP 128-33.

Appellant's Opening Br. at 2-3. Contrary to this passage in Baker's brief, CP 66-67 does not support the claim that Estock sent to Borgen both front and back of two money orders. CP 75 does not indicate whether Estock forwarded both sides of the money orders. CP 128-33 confirms that Baker received the back of both money orders for the first time through his attorney on December 30, 2015, after Baker filed suit.

In a June 1, 2015 e-mail, Gaylene Schave asked Cherrie Borgen if she had copied the back of each negotiable instrument with endorsements and requested that Borgen inform her if the department lacked the back of instruments. Borgen sent all the records she received to Schave on June 3. To our knowledge, Borgen's response never answered Schave's question of whether Borgen had copied both sides of negotiable instruments.

DOC's mysterious automated public disclosure management system for some unknown reason deemed a second search necessary to respond to Shappa Baker's public

7

records request. Thus, during the three months after receiving the records request, DOC staff conducted at least two extensive searches. According to DOC, each facility provided all responsive records in its possession to the PDU a second time. We do not know if a second search uncovered additional requests.

On July 14, 2015, Cherrie Borgen e-mailed a message to Gaylene Schave, which message read in part:

> I spoke to Pat Barerra regarding items "s" and "t", she said that they requested those records from the bank since they do not keep those items on site.

CP at 87. Items "s" and "t" refer to two money orders of August 6, 2009. Someone handwrote on the message: "BOA copies. We have 2 pgs." CP at 87. We do not know if the reference to two pages establishes that the bank only faxed the front side of each money order. Borgen's July 14 e-mail omits reference to Estock's e-mail of May 21, by which Estock sent Borgen scanned copies of records the bank faxed to DOC.

In his appeal brief, Shappa Baker pens:

> This is confusing because there were actually four pages received if one courts [counts] and [the] front and back separately as it was set forth in the request and as Estock received them. However, they were never provided.

Appellant's Opening Br. at 4 n.1. We assume the comment "they were never provided" means DOC never provided the front and back sides to Baker. Nevertheless, no record or testimony supports Estock having received both front and back of the money orders.

8

On July 28, 2015, Gaylene Schave wrote to Shappa Baker that she had gathered thirty pages of responsive records and instructed him to send payment for copies and postage if he wanted to inspect the records. Baker paid, and Schave acknowledged receiving payment in an August 25, 2015 letter. DOC then sent a CD (compact disk) containing the records to Baker's third party designee, his mother Roberta Baker, and Schave wrote to Shappa Baker that DOC considered his public records request fulfilled. According to Roberta Baker, she received a computer disk housing thirty pages of documents and an exemption log. The exemption log notified Baker that DOC redacted computer security and IPIN numbers from pages 11 and 15 of the request's response and DOC redacted bank account numbers from pages 25 and 26 of the response.

In his public records request, Shappa Baker sought the front side of nine money orders. DOC produced front sides of three money orders. None of the money orders employ the phrase "pay to the order of." Instead, the money orders read: "Pay to Shappa Baker." CP at 107, 108, 110. DOC produced no back sides of money orders. The DOC production may have included records never requested such as a trust account statement for Shappa Baker dated June 24, 2015.

Shappa Baker contends that DOC provided both sides of only nineteen of thirty-one negotiable instruments. He further contends that DOC failed to supply copies of the front and back of seven of the money orders included in his request and that he received copies of only one side of six checks. *See* Appellant's Opening Br. at 5. In all, Baker

9

claims the department failed to disclose the front side of six records and the back side of eleven records he requested.

According to Shappa Baker, the following matrix lists each record requested with the response from DOC:

| | Date | Description | Facility | Front | Back |
|---|---|---|---|---|---|
| a. | 11/06/2008 | Money Order | Penitentiary | No | No |
| b. | 11/06/2008 | Money Order | Penitentiary | No | No |
| c. | 11/16/2008 | Western Union | Penitentiary | No | N/A |
| d. | 12/08/2008 | Western Union | Penitentiary | Yes | N/A |
| e. | 12/15/2008 | Gratuity | Penitentiary | N/A | N/A |
| f. | 01/16/2009 | Money Order | Penitentiary | No | No |
| g. | 02/04/2009 | Money Order | Penitentiary | No | No |
| h. | 02/13/2009 | Gratuity | Penitentiary | N/A | N/A |
| i. | 02/13/2009 | Gratuity | Penitentiary | N/A | N/A |
| j. | 03/17/2009 | Money Order | Penitentiary | No | No |
| k. | 04/15/2009 | Gratuity | Penitentiary | N/A | N/A |
| 1. | 05/15/2009 | Gratuity | Penitentiary | N/A | N/A |
| m. | 06/03/2009 | Western Union | Penitentiary | Yes | N/A |
| n. | 06/15/2009 | Gratuity | Penitentiary | N/A | N/A |
| o. | 06/17/2009 | Western Union | Penitentiary | Yes | N/A |
| p. | 07/15/2009 | Gratuity | Penitentiary | N/A | N/A |
| q. | 07/15/2009 | Gratuity | Penitentiary | N/A | N/A |
| r. | 07/23/2009 | Money Order | Penitentiary | No | No |
| s. | 08/06/2009 | Money Order | Coyote Ridge | Yes | 12/30/2015 |
| t. | 08/06/2009 | Money Order | Coyote Ridge | Yes | 12/30/2015 |
| u. | 08/18/2009 | Gratuity | Airway Heights | N/A | N/A |
| v. | 10/05/2009 | Western Union | Airway Heights | Yes | N/A |
| w. | 11/02/2009 | Western Union | Airway Heights | Yes | N/A |
| z. | 01/20/2011 | Refund | Airway Heights | No | No |
| aa. | 04/04/2011 | Money Order | Airway Heights | Yes | No |
| bb. | 04/07/2011 | Western Union | Airway Heights | Yes | N/A |
| cc. | 03/07/2013 | JPay | Airway Heights | Yes | N/A |
| dd. | 03/07/2013 | Warrant | Headquarters | Yes | No |
| ee. | 09/16/2013 | Gratuity | Airway Heights | Yes | N/A |

Appellant's Opening Br. at App. A.

Shappa Baker first received the back sides of items "s" and "t" during discovery after the lawsuit was filed. Thus, according to Baker, he did not receive timely or has not received at all the following negotiable instruments:

> Both sides of a November 6, 2008 money order;
> Both sides of a second November 6, 2008 money order;
> A one page document representing a deposit from Western Union on
> November 16, 2008;
> Both sides of a January 16, 2009 money order;
> Both sides of a February 4, 2009 money order;
> Both sides of a March 17, 2009 money order;
> Both sides of a July 23, 2009 money order;
> The back side of an August 6, 2009 money order;
> The back side of a second August 6, 2009 money order;
> Two pages of documents representing a refund on January 20, 2011;
> The back side of an April 4, 2011 money order;
> The second page or back side of a March 7, 2013 warrant.

We refer to this list as Shappa Baker's "missing list."

Although Shappa Baker denies receiving a "Western Union" document for November 16, 2008, DOC produced, in response to the public records request, a one page document, in the form of a deposit slip, confirming a deposit of $120 to the benefit of Baker with the sender being his mother, Roberta Baker. Nevertheless, five other similar produced pages confirm respective deposits on December 8, 2008, June 3, 2009, June 17, 2009, October 2, 2009, and April 7, 2011, yet Baker agrees he received the requested "Western Union" documents for these dates.

11

A Bank of America website page, visited on February 13, 2016, read that the bank makes available copies of cancelled checks for "up to 7 years" after their respective postings. CP at 126, 178. The document does not read that copies are always available for at least seven years. No testimony or records establish that this retention policy extended to money orders.

DOC avers that it provided accurate copies of all documents as they existed at the time of the public records request. Gaylene Schave declares that DOC conducted a reasonable search for all records in its possession and disclosed each record found.

## PROCEDURE

Shappa Baker filed a complaint alleging violations of the Public Records Act by DOC for failure to produce records, failure to adequately search, withholding records not exempt from disclosure, failing to adequately explain redactions, and acting in bad faith. Baker later filed a summary judgment motion. DOC responded by submitting its own summary judgment motion. The trial court granted DOC's motion. Baker appeals.

## LAW AND ANALYSIS

The parties raise an interesting and important issue with regard to the application of the Public Records Act. The parties ask us to determine whether the scanned copies of documents stored on the Bank of America servers are public records within the meaning of the Public Records Act? When answering this question, we would need to decide whether documents in the possession of Bank of America comprised records that DOC

12

prepared, owned, used, or retained and that contained information relating to the conduct of government. RCW 42.56.010(3). We decline to answer this issue at this juncture of the litigation because of the incomplete status of the record.

Before discussing summary judgment principles, we highlight some incongruities that preclude us from either affirming summary judgment in favor of DOC or granting judgment in favor of Shappa Baker. Baker devotes his briefing to the question of whether records in the possession of Bank of America constitute public records. Nevertheless, Baker does not expound as to whether he ever claimed or still claims that DOC failed to produce requested writings held in its direct possession at the time of the request. Some of the writings on Baker's missing list might have been solely in the immediate possession of DOC. Also, we lack facts as to whether Bank of America ever possessed any records concerning refunds or warrants.

Shappa Baker denies receiving the "Western Union" document for November 16, 2008. Nevertheless, DOC produced a one page document, in the form of a deposit slip, confirming a deposit of $120 on November 16 to the benefit of Shappa Baker with the sender being his mother, Roberta Baker. Baker concedes that similar slips delivered by DOC to him suffice for fulfilling the requests he issued for five other "Western Union" documents. Baker does not explain why the slip avails for purposes of five requests but fails for purposes of one request. We do not know if Baker believes DOC or Bank of

13

America possess any other records, in addition to the slips, that confirm a deposit in Baker's trust subaccount through Western Union.

In his public records request, Shappa Baker sought the front side of nine money orders. DOC produced front sides of three money orders. DOC does not explain why it did not produce the other requested six money orders. DOC does not indicate whether it concedes the other six money orders ever existed.

In response to a discovery request, DOC produced the back sides of two money orders, the front side of which it produced in response to Shappa Baker's public records request. Nevertheless, Baker's public records request only sought the back side of "each negotiable financial instrument." CP at 72. Based on the language in the first paragraph of his public records request, Shappa Baker apparently considers a money order to be a negotiable instrument, but he provides no law that establishes a money order to be a negotiable instrument. The term "money order" may encompass non-negotiable as well as negotiable instruments. *Hong Kong Importers, Inc. v. American Express Co.*, 301 So.2d 707, 709 (La. Ct. App. 1974). The United States Postal Service issued the money orders in question. A postal domestic money order is not necessarily like the ordinary negotiable instrument. *United States v. First National Bank of Boston*, 263 F. Supp. 298, 301 (D. Mass. 1967). Shappa Baker's money orders did not read: "pay to the order of."

DOC does not address whether a money order is a negotiable instrument. Neither party addresses whether DOC should have reasonably concluded that Shappa Baker,

14

when asking for the back side of negotiable instruments, sought the back side of money orders. Stated differently, neither party addresses whether the back side of money orders fell within the second paragraph of Baker's public records request.

Shappa Baker argues that DOC held an obligation to retrieve negotiable instrument records from Bank of America. DOC's response to a request for production in this litigation suggests that Bank of America possessed the back side of two money orders at the time of Baker's public records request. Nevertheless, no facts before us establish that Bank of America possessed, at the time of the request, copies of any other records, including back or front sides of money orders, sought by Baker. A Bank of America website page, visited on February 13, 2016, read that the bank makes available copies of cancelled checks for "up to 7 years" after their respective postings. CP at 126, 178. The document does not read that copies are always available for at least seven years. Also, Shappa Baker never asked for copies of any cancelled checks. No testimony or discovery records establish that the bank's retention policy extended to money orders.

Shappa Baker enumerates, on his missing list, two pages of documents representing a refund on January 20, 2011. Baker fails to sufficiently describe the nature or purported contents of the pages. DOC does not indicate whether these purported pages exist. Shappa Baker also itemizes, on his missing document list, the second page or back side of a March 7, 2013 warrant. Neither party indicates if a warrant's back side includes any writing. DOC does not indicate whether a back side with content ever existed.

15

DOC denies any obligation to retrieve, from Bank of America, records sought by Shappa Baker. DOC emphasizes that any copies scanned or created by the computer terminal, through which DOC communicates in cyberspace with Bank of America, are not papers in the possession of DOC particularly since the terminal comprises Bank of America proprietary software. Nevertheless, DOC delivered copies of three money orders and some deposit slips. We do not know how DOC accessed the Western Union slips or money orders. More specifically, we do not know if DOC retrieved the papers from Bank of America, whether DOC stored the papers on and retrieved the papers from the Bank of America terminal, or whether DOC stored the papers on its own servers.

The trial court record shows that Ben Estock sought copies of money orders from Bank of America. We do not know if other DOC employees requested copies of scanned documents from Bank of America. DOC contends that Estock went beyond the department's duty when seeking records from Bank of America, but DOC does not explain why Estock contacted Bank of America to retrieve records if the department had no obligation to perform this task.

DOC avers that it provided accurate copies of all documents as they existed at the time of the public records request. When making this representation, DOC does not disclose whether it provided the requested negotiable instruments that DOC earlier scanned and sent to Bank of America. We question how DOC would have any money order and Western Union transfer records in its direct possession if it scanned all

16

negotiable instruments, deposit slips, and money orders, sent the scanned records to Bank of America, and then destroyed the originals. DOC does not inform this court as to which of the items on Baker's missing list it insists it timely provided to Baker, which items neither DOC nor Bank of America possessed at the time of the public records request, and which items Bank of America may have possessed but DOC did not directly possess at the time of the public records request.

We now turn to summary judgment principles. This court reviews a summary judgment order de novo, engaging in the same inquiry as the trial court. *Highline School District No. 401 v. Port of Seattle*, 87 Wn.2d 6, 15, 548 P.2d 1085 (1976); *Mahoney v. Shinpoch*, 107 Wn.2d 679, 683, 732 P.2d 510 (1987). Summary judgment is proper if the records on file with the trial court show no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c); *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000).

We also review public agency actions challenged under the Public Records Act de novo. RCW 42.56.550(3); *Cornu-Labat v. Hospital District No. 2*, 177 Wn.2d 221, 229, 298 P.3d 741 (2013). An appellate court stands in the same position as the trial court when the record consists entirely of documentary evidence and affidavits. *Cornu-Labat v. Hospital District No. 2*, 177 Wn.2d at 229. When, because of unanswered factual questions, this court cannot determine whether genuine issues of material fact require a trial, this court will vacate any summary judgment order and remand for further

17

No. 34967-5-III
*Baker v. Dep't of Corr.*

proceedings. *Kilcullen v. Calbom & Schwab, PSC*, 177 Wn. App. 195, 202, 312 P.3d 60 (2013).

Either Shappa Baker or DOC may later be entitled to a summary judgment order. Nevertheless, the many anomalies we list and the many questions we pose disable this court from determining whether any party deserves a summary judgment order, and, if so, which party. Eventually, a trial may be needed.

CONCLUSION

We vacate the summary judgment order dismissing Shappa Baker's complaint. We remand to the trial court for further proceedings consistent with this opinion.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Fearing, C.J.

WE CONCUR:

Lawrence-Berrey, J.

Pennell, J.

18